William K. COOK, Appellant,

v.

Rebecca M. COOK, Appellee.

No. 13–93–423–CV.

Court of Appeals of Texas,
Corpus Christi.

Oct. 28, 1994.

Thomas B. Foster, Jr., James F. Tyson, Houston, for appellant.

Joel A. Nass, Nass & Brown, Marchris G. Robinson, Chamberlain, Hrdlicka & White, Houston, for appellee.

Before KENNEDY, GILBERTO HINOJOSA, and YAÑEZ, JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

Appellant appeals from a divorce decree signed and entered by the trial court subsequent to an oral pronouncement from the bench. By one point of error, appellant asserts that the trial court erred in entering the divorce decree and qualified domestic relations order since the two instruments did not comport with the oral rendition of judgment. We affirm.

In December 1991, Rebecca Cook filed for divorce from her husband, William Cook. On July 30, 1992, the trial court executed a temporary order which superseded two prior temporary orders until further order of the court. During the divorce trial, the parties stipulated that 42% of Mr. Cook's federal retirement benefits constituted his separate property and the remaining 58% constituted community property. At the close of the trial, the trial court announced that it would render a decision on January 29, 1992.

After a postponement, the court orally announced its ruling on February 11, 1993. The trial court granted the divorce and divided the property and debts owned by the parties. Among her other awards, Mrs. Cook received 60% of the community interest in Mr. Cook's U.S. Civil Service Panama

Canal Commission retirement benefits. Thus, Mrs. Cook received a 34.80% (60% × 58%) interest in the retirement benefits. Additionally, Mrs. Cook requested that the court grant her a survivor annuity benefit payable if Mr. Cook's death occurred after his retirement. After being informed by Mrs. Cook's counsel that the survivor benefits could be obtained at no additional cost to Mr. Cook, the court then granted the survivor benefits to Mrs. Cook as part of the retirement benefits package. Mr. Cook's counsel requested that the judgment be worded in such a fashion because it probably will cost him additional fees to obtain survivor benefits. Neither party received attorneys' fees and the court asked Mrs. Cook's attorney to draw up an order to be entered at a later date.

On March 30, 1993, the trial court held a hearing to consider entry of the divorce decree and qualified domestic relations order (QDRO) drafted by Mrs. Cook's attorney. During the hearing, the judge heard further arguments concerning the cost to Mr. Cook of having to obtain survivor benefits. The judge then signed the two documents as drafted. The divorce decree and QDRO granted Mrs. Cook a former spouse survivor annuity in an amount equal to 100% of the maximum possible survivor annuity and provided that all obligations and duties imposed by prior orders of the court not yet discharged shall survive this judgment.

On April 28, 1993, Mr. Cook filed a Motion to Modify, Correct or Reform Judgment and, in the Alternative, Motion for New Trial. The motion referenced the survivor benefits and prior orders provisions as not comporting with the court's prior oral pronouncement. The trial court denied Mr. Cook's motion.

By a single point of error, appellant contends that the trial court erred in entering a divorce decree that did not conform with the judgment rendered on February 11, 1993. The discrepancies cited by appellant are as follows:

1. the decree awarded Mrs. Cook a survivor annuity although appellant had shown that such an award would reduce his overall retirement benefits;

2. the decree awarded Mrs. Cook "100% of the maximum possible survivor annuity" although the court previously awarded her a 34.80% interest in Mr. Cook's retirement benefits; and

3. the decree provided for the survival of temporary orders although no reference to the survival of temporary orders was made in the court's oral ruling.

Appellant argues that the court's oral pronouncement on February 11 was a rendition of judgment; therefore, when the judgment entered materially conflicts with the judgment rendered, the judgment entered must be reformed to conform with the rendition.

A rendition is the judicial act by which the court settles and declares the decision of the law upon the matters at issue. *Comet Aluminum Co. v. Dibrell,* 450 S.W.2d 56, 58 (Tex.1970); *Wood v. Griffin & Brand,* 671 S.W.2d 125, 128 (Tex.App.—Corpus Christi 1984, no writ). A judgment is "rendered" when the decision is officially announced either orally in open court or by written memorandum filed with the clerk. *Samples Exterminators v. Samples,* 640 S.W.2d 873, 875 (Tex.1982); *Bakali v. Bakali,* 830 S.W.2d 251, 254 (Tex.App.—Dallas 1992, no writ). Entry of a written judgment is a ministerial act reflecting the court's action. *Bakali,* 830 S.W.2d at 254; *Wood,* 671 S.W.2d at 128.

If the written order does not comport with the judgment rendered, the parties are entitled to have the order reformed to accurately reflect the action taken by the trial court. *See* Tex.R.Civ.P. 329b(g). However, until thirty days *after the judgment is signed,* the trial court has plenary power to vacate, modify, correct, or reform its judgment at any time before it becomes final. Tex.R.Civ.P. 329b(d); *Mesa Agro v. R.C. Dove & Sons,* 584 S.W.2d 506, 508 (Tex.App.—El Paso 1979, writ ref'd n.r.e.). Within this period, the trial court's power to modify its judgment is virtually absolute. *Garza v. Serrato,* 671 S.W.2d 713, 714 (Tex.App.—San Antonio 1984, no writ).

A judge's oral announcement is often necessarily tentative and may not cover all the

**132**

details of a final decree since he knows he will review the draft of judgment before signing it. *Kostura v. Kostura,* 469 S.W.2d 196, 198 (Tex.Civ.App.—Dallas 1971, writ ref'd n.r.e.). The *Kostura* court further stated:

> If he [trial judge] finds that the draft varies from his judgment, he must decide whether to make the draft conform to his judgment or change his judgment in accordance with the draft. If he signs the draft, the judgment entered is presumptively the judgment as he finally intends it, and it ought not to be subject to change on a bare showing that it varies in some particular from the judgment as first announced.

*Id.* at 199.

 On February 11, the trial court orally announced its decision in open court. The court settled and declared its decision of the law upon the matters at issue. Thus, we agree with appellant that the oral pronouncement constituted a rendition of judgment by the court. However, no final judgment was signed at this time. Accordingly, the trial court retained plenary power over its judgment and was free to modify it which the court evidently did when the judge later signed and entered the divorce decree and QDRO. What the appellant claims to be "errors" in the written judgment are actually modifications in the terms of the judgment. Thus, the trial court did not err in signing and entering a decree that differed from the oral rendition.

The trial court has broad discretion in determining the disposition of property in divorce actions and this discretion will not be disturbed absent a showing of an abuse of discretion. *McKnight v. McKnight,* 543 S.W.2d 863, 866 (Tex.1976). The role of the court of appeals in reviewing cases where property is divided in a divorce action is to determine only if there is an abuse of discretion. *Id.; Allen v. Allen,* 646 S.W.2d 495, 496 (Tex.App.—Houston [1st Dist.] 1982, no writ). This abuse must be clearly demonstrated or the discretion will not be disturbed on appeal and it will be presumed that the trial court acted properly. *Allen,* 646 S.W.2d at 496.

In the present case, there are no findings of fact or conclusions of law stating the reasons for the court's modifications of the property division. Therefore, we must presume that the trial judge exercised his discretion properly.

We overrule appellant's sole point of error and affirm the judgment of the trial court.