Donald L. **MORRIS**, Appellant,

v.

Elizabeth Lawler **MORRIS**, Appellee.

No. 2–94–063–CV.

Court of Appeals of Texas,
Fort Worth.

Feb. 28, 1995.

Rehearing Overruled March 30, 1995.

Richard B. Tanner, Dallas, for appellant.

Leigh Ann Fouts, Grand Prairie, for appellee.

Before LATTIMORE and DAY, JJ.

## OPINION

DAY, Justice.

Appellant Donald L. Morris appeals from a final decree of divorce which divided property, allocated debts and determined child custody and support. He brings five points of error: (1) the trial court erred by awarding appellee an amount of money and a percentage of any increase in appellant's military retired pay; (2) the trial court erred by imposing alimony upon a retired military member; (3) the trial court abused its discretion in disproportionate division of the property and debts of the parties; (4) the trial court erred by failing to insure that the signed decree followed its rendition as to the amount of monthly child support and circumstances of any increase; and (5) the trial court erred by prohibiting appellant from changing his survivor benefit beneficiary. Appellee brings one cross-point, claiming Donald's appeal has been taken for purposes of delay and without sufficient cause, and asking us to award her damages under the Texas Rules of Appellate Procedure. We overrule appellant's first, second, third and fifth points of error and appellee/counter-appellant's cross-point. We sustain appellant's fourth point of error and modify the judgment of the trial court accordingly.

Donald Morris ("Donald") entered the military in 1969. In 1970, he married appellee Elizabeth Lawler Morris ("Elizabeth"). Elizabeth filed for divorce on March 4, 1992, four days after Donald's retirement from the United States Navy. At the time she filed for divorce, Elizabeth was separated from Donald and was living in Arlington, Texas. Donald was living in Lancaster, Texas. Donald filed an Original Answer, containing a General Denial, on March 20, 1992.

Donald and Elizabeth entered into Agreed Temporary Orders on May 28, 1992, wherein Donald was to pay $400.00 per month in child support and to pay the younger child's orthodontic bill to Dr. John Valant. The case was called to trial on April 14, 1993, and the parties entered into an agreed settlement at that time. Such agreement called for Donald to pay $120.00 per month in child support and for Elizabeth to receive 50 percent of Donald's military retirement benefits pay. Shortly thereafter, Donald learned he would be receiving disability payments in lieu of his retirement, which would preclude Elizabeth from receiving her full share of Donald's retirement benefits. Donald informed Elizabeth of this change and offered to pay $400.00 in monthly child support if Elizabeth would not go after Donald's retirement benefits if he were to discontinue receiving disability and resume receiving the retirement pay.

On July 8, 1993, Elizabeth filed a Motion to Enforce Master's Recommendation because of Donald's failure to pay child support and the orthodontic bills. The trial court entered an Order to Set Aside Prior Agreement, and the case was set for final trial on August 26, 1993. At that time, the court ordered Donald to pay $110.00 per month in child support and also ordered Donald to pay $275.00 per month in child support if for any reason in any month Donald received disability income in lieu of his normal retirement income. Although Elizabeth was awarded one-half of Donald's retirement benefits, she maintains he continues to refuse to pay her that portion of the benefits owed.

■ In his first point of error, Donald claims the trial court committed reversible error by awarding Elizabeth an amount of money and a percentage of any increase in Donald's military retired pay. Donald concedes the trial court had *in personam* jurisdiction and that the trial court had general family law subject matter jurisdiction; however, he argues the trial court lacked jurisdiction over disposable retired pay under the Uniformed Services Former Spouses' Protec-

tion Act ("FSPA"), 10 U.S.C.A. § 1408 (1983). Donald says the FSPA was intended to protect servicepersons from state laws which would not have been imposed absent assignment for military duty in the situs state. He says that, although the twenty-nine page final divorce decree references the jurisdictional aspects of the FSPA, all references pertain to Elizabeth, not to Donald. He argues that the trial court lacked the power to treat any disposable retired pay as property of the parties and that the disposition, as a result, is void.

Elizabeth's response, unchallenged by appellant, is that Donald has remained in Texas since retirement and conducts several businesses out of his home in Texas. At the time the divorce was filed, Donald did not file a special appearance but instead filed a general answer, appeared at temporary hearings and entered into agreed temporary orders, appeared at two trials and never objected to the jurisdiction of the court to hear the divorce or any related matter. Donald does not dispute that he has remained in Texas, conducted several businesses out of his home in this state, or that in failing to file a special appearance to contest jurisdiction he has effectively waived this point.

■ Texas Rules of Civil Procedure allow a party to challenge the jurisdiction of a court over a person or property through a special appearance; however, the rule authorizing the special appearance mandates strict compliance. TEX.R.CIV.P. 120a; *Slater v. Metro Nissan of Montclair,* 801 S.W.2d 253 (Tex.Civ.App.—Fort Worth 1990, writ denied). Once a party enters an appearance by filing an answer without challenging jurisdiction, he is before the court for all purposes. *West v. City Nat'l Bank of Birmingham,* 597 S.W.2d 461, 464 (Tex.Civ.App.—Beaumont 1980, no writ).

10 U.S.C.A. § 1408(c)(4) (1983) provides as follows:

A court may not treat the disposable retired or retainer pay of a member in the manner described in paragraph (1) unless the court has jurisdiction over the member by reason of (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his consent to the jurisdiction of the court.

*Id.*

Paragraph (1) of the FSPA states that:

Subject to the limitations of this section, *a court may treat disposable retired or retainer pay* payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

10 U.S.C.A. § 1408(c)(1) (1983) (emphasis added).

Where the former serviceperson wishes to challenge jurisdiction, he or she must comply with the requirements of Rule 120a by filing a special appearance. Where the former serviceperson allows a trial to proceed without obtaining a ruling on his Rule 120a motion, the special appearance is waived and the party has consented to the court's jurisdiction. *Seeley v. Seeley,* 690 S.W.2d 626, 628 (Tex.Civ.App.—Austin 1985, no writ).

Donald did not file a special appearance but instead filed a general answer. He appeared at hearings and was generally involved in the process between March 20, 1992, when he filed his answer, and December 9, 1993, when his Motion for New Trial was filed. Donald did nothing to challenge or contest the trial court's jurisdiction during the entire process and waited to raise the issue during his appeal. Accordingly, point of error one is overruled.

■ In his second point of error, Donald claims the trial court erred by imposing alimony upon a retired military member. Donald claims the Texas marital property scheme as applied to disposable retired pay conflicts with the intent of the Texas legislature to not have permanent alimony. He says the division of military benefits here violates state law because it effectively imposes alimony upon him and that it also infringes upon his rights under the due process and/or equal protection clause of the Fourteenth Amendment to the United States Constitution. He fails, however, to cite a

single Texas case which even remotely defines the division of disposable retired military pay as alimony and instead offers a history lesson detailing Congress' desire to demonstrate special concern for service personnel and a general, if unconvincing, public policy argument.

The FSPA allows state courts to continue to apply community property laws. *See* 10 U.S.C.A. § 1408; *Cameron v. Cameron*, 641 S.W.2d 210, 212–13 (Tex.1982). It is well-settled that military retirement benefits earned from years of service during the marriage are community property. Tex.Fam. Code Ann. § 5.01 (Vernon 1993); *Cearley v. Cearley*, 544 S.W.2d 661 (Tex.1976); *Taggart v. Taggart*, 552 S.W.2d 422 (Tex.1977). Military retirement pay is a vested community property right, subject to division by the divorce court, and it is not alimony. *United States v. Stelter*, 553 S.W.2d 227, 229 (Tex. Civ.App.—El Paso 1977), *reversed on other grounds*, 567 S.W.2d 797 (1978). Donald's second point of error is overruled.

In his third point of error, Donald claims the trial court erred in ordering him to pay all debts of the marriage and $1,500.00 in attorney fees. Donald claims it was a clear abuse of discretion for the trial court to depart from the basic rule of equitable distribution of assets and liabilities but fails to argue these bald assertions.

Elizabeth responds that among·the debts awarded to Donald were debts to Beneficial Finance, Mike Stringer and Softron International. Elizabeth notes Donald refinanced the Beneficial Finance debt in his own name during the marital separation and the creditor agreed to look only to him for payment. The debts owed Mike Stringer and Softron International were debts incurred by Donald for his businesses. Finally, Elizabeth notes the income tax debt was owed for taxes on Donald's retirement pay, from which Elizabeth did not benefit. Elizabeth maintains the court was within its discretion to order Donald to pay attorney fees in light of what she calls Donald's fraud regarding his receipt of disability pay in lieu of retirement pay.

■ The Texas Family Code does not require the trial court to make an equal division of the community estate. Rather, it vests wide discretion within the trial court to divide the property in a manner the court deems just and right. Tex.Fam.Code Ann. § 3.63 (Vernon 1993). "The role of the court of appeals in reviewing cases where property is divided in a divorce action is to determine only if there is an abuse of discretion." *Allen v. Allen*, 646 S.W.2d 495, 496 (Tex.App.—Houston [1st Dist.] 1982, no writ). "This abuse must be clearly demonstrated or the discretion will not be disturbed on appeal and it will be presumed that the trial court acted properly." *Id.* (citing *Bell v. Bell*, 513 S.W.2d 20 (Tex.1974)). Where, as here, the record does not contain any request for findings of fact and conclusions of law, the judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *In the interest of W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984).

■ It is well-established that debts contracted during the marriage are presumed to be community, unless it is shown the creditor agreed to look solely to the separate estate of the contracting spouse for satisfaction. *Humphrey v. Taylor*, 673 S.W.2d 954, 956 (Tex.App.—Tyler 1984, no writ) (citing *Cockerham v. Cockerham*, 527 S.W.2d 162, 171 (Tex.1975)). We do not find it was a clear abuse of discretion to award Donald the debt to Beneficial Finance given that he had refinanced the note in his own name and the creditor agreed to the arrangement. It was not an abuse of discretion to award Donald the debts owed Mike Stringer and Softron International, particularly since those debts were incurred by Donald for his businesses, nor was it an abuse of discretion for Donald to be ordered to pay the tax debt.

■ The award of attorneys fees is one factor to consider in making an equitable division of the estate in a divorce. *Simpson v. Simpson*, 727 S.W.2d 662, 664 (Tex.App.—Dallas 1987, no writ) (citing *Thomas v. Thomas*, 525 S.W.2d 200, 201 (Tex.Civ. App.—Houston [1st Dist.] 1975, no writ)). We cannot say, then, that it was improper for the court to have ordered Donald to pay attorney fees, either. Donald's third point of error is overruled.

In his fourth point of error, Donald claims the trial court committed reversible error by failing to insure the signed decree followed its rendition as to the amount of monthly child support and the circumstances of any increase. The final judgment stated that Donald was to pay $120.00 per month in child support and that in the event Donald became more than 10% disabled, Donald's monthly child support obligation would increase to $275.00. The docket sheet reflects that Donald was to pay $120.00 per month in child support and that "[i]f in any mo. resp[ondent] receives disability instead of retirement-support for that mo. will be $275.00" In the Statement of Facts, the trial court ordered Donald to pay $110.00 per month in child support and stated that "if for any reason Mr. Morris goes into the hospital then he is paid disability in lieu of his retirement pay and if for any month he is paid disability benefits in lieu of his retirement pay, support is set in the sum of $275 for that month."

Donald first says that this court should modify the judgment to be consistent with the judgment rendered on these two points "irrespective of any other relief," but he then argues that this court should modify the final decree to provide for $110.00 per month in child support and payment of child support of $275.00 per month *if* Donald is 100% disabled and affirm.

Elizabeth's response, unchallenged by Donald, is that Donald had ample opportunity to urge the trial court to correct the discrepancy between the language used by the trial court at the trial and the final judgment but repeatedly failed to do so. Elizabeth claims that although Donald was represented by counsel at the hearing on the Motion to Enter Judgment, which occurred on November 9, 1993 and at which the final agreed decree was signed, Donald failed to raise any objection as to the contents of the judgment. Further, she points out that Donald failed to raise any complaint about the language of the final decree in his Motion for New Trial, which was filed on December 9, 1993, before the court lost plenary power. However, Elizabeth recognizes the disparity between the amount of child support ordered by the court at the hearing and the amount reflected in the final agreed decree and says the strict language of the trial court should be incorporated into the decree.

In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make. TEX.R.APP.P. 52(a). It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion. *Id.* Although Donald failed to show due diligence to cause the order to be corrected and arguably waived his complaint, *see McCaskill v. McCaskill,* 761 S.W.2d 470, 474 (Tex.App.— Corpus Christi 1988, writ denied); *Dodson v. Seymour,* 664 S.W.2d 158, 160 (Tex.App.— San Antonio 1983, no writ), there clearly is a disparity in the amount of child support ordered at the hearing and in the decree. Although Donald made an inadequate effort to bring this discrepancy to the attention of the trial court, both parties have requested the judgment be corrected to reflect the court's strict language. Therefore, we modify the judgment of the trial court pursuant to TEX. R.APP.P. 80(b). Donald is ordered to pay $110.00 per month in child support, and if for any reason in any month he receives disability income in lieu of his normal retirement income, Donald is ordered to pay $275.00 per month in child support.

In his fifth point of error, Donald claims the trial court erred by prohibiting him from changing his survivor benefit beneficiary. Donald argues that federal law has preempted this area and that state courts are not free to substitute their decision for Congress' action. However, Elizabeth points out that 10 U.S.C.A. § 1447 (1983) provides that if a divorce occurs after retirement and the member of the Survivor Benefit Plan had initially elected to participate in the Survivor Benefit Plan when retiring, a court may order continued participation by the member in favor of the former spouse.

Donald answered "Yes" when asked whether he had the benefit in place. The court was within its authority to order continued participation pursuant to 10 U.S.C.A.

§ 1450(f) (1983). Donald's fifth point of error is overruled.

In her cross-point, Elizabeth argues that Donald has no reasonable ground to believe the trial court's judgment will be reversed and asks that we award her damages of ten percent of the amount in dispute pursuant to rule 84 of the Texas Rules of Appellate Procedure.

Elizabeth argues that established law in this jurisdiction is contrary to any possible theory raised by appellant as to four of his five points of error and that in the one point of error where Donald might have been entitled to relief, point of error four, the appropriate action of this court would have been correction and clarification by the trial court rather than reversal. She further argues that the history of the case, a review of the record and examination of the authorities relied upon by the parties can only lead to the conclusion that the sole purpose of Donald in perfecting his appeal was to delay final adjudication.

Rule 84 of the Texas Rules of Appellate Procedure authorizes us to award the prevailing appellee an amount not to exceed ten times the total taxable costs as damages against appellant if we determine that an appellant has taken an appeal for delay and without sufficient cause. Delay damages should only be applied with prudence, caution and after careful deliberation. *Masterson v. Hogue,* 842 S.W.2d 696, 699 (Tex.App.—Tyler 1992, no writ). In making findings as to whether an appeal has been taken for delay without sufficient cause, we must review the case from the advocate's point of view and determine whether the advocate had reasonable grounds to believe the case would be reversed. *Jones v. Colley,* 820 S.W.2d 863, 867 (Tex.App.—Texarkana 1991, writ denied). We have previously held that sanctions would not be granted on appeal if the appellant's brief was well-researched and presented arguable points of error. *Trans–Continental Fin. Corp. v. Summit Nat'l Bank,* 761 S.W.2d 575, 578 (Tex.App.—Fort Worth 1988, no writ) (citing *GTE Directories Corp. v. McKinnon,* 734 S.W.2d 429, 432 (Tex.App.—Fort Worth 1987, no writ)). Although the law as to four of Donald's points of error is exceedingly well-settled, he raised one valid complaint. Because Donald's brief presented an arguable point of error, we cannot say his appeal was taken for delay and without sufficient cause. Elizabeth's cross-point is overruled.

The judgment of the trial court is modified as to point of error four and in all other respects affirmed.